**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| PROGRESSIVE CASUALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff / Counterclaim Defendant, | ) ) Civil Action No. 1:11-cv-0082 |
| v. | ) ) |
| ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, SAFECO INSURANCE COMPANY OF ILLINOIS, SAFECO INSURANCE COMPANY OF AMERICA, LIBERTY MUTUAL FIRE INSURANCE COMPANY and LIBERTY MUTUAL INSURANCE COMPANY, | ) HONORABLE BENITA Y. PEARSON ) ) ) ) ) ) ) ) ) |
| Defendants / Counterclaim Plaintiffs. | ) ) |
| ALLSTATE INSURANCE COMPANY and ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, | ) ) ) ) |
| Counterclaim Plaintiffs, | ) ) |
| v. | ) ) |
| PROGRESSIVE CASUALTY INSURANCE COMPANY and DRIVE TRADEMARK HOLDINGS, LP, | ) ) ) ) |
| Counterclaim Defendants. | ) ) |

**MEMORANDUM IN SUPPORT OF LIBERTY MUTUAL DEFENDANTS' MOTION TO STAY LITIGATION PENDING *EX PARTE* REEXAMINATION OF THE <u>PATENTS-IN-SUIT BY THE UNITED STATES PTO</u>**

**TABLE OF CONTENTS**

                                                                                                              **Page**

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF FACTS ............................................................................................... 4

      A. Liberty Mutual Has Diligently Pursued Reexamination, Which Will Proceed Quickly Unless Progressive Delays. ..................................................................... 4

      B. The Reexamination Request is Likely to Result in Progressive's Claims Being Canceled or Amended. .......................................................................................... 7

III. STANDARD OF REVIEW ............................................................................................... 9

IV. ARGUMENT ................................................................................................................... 10

      A. As Demonstrated by Judge Gaughan's Stay in a Case with Very Similar Facts and Overlapping Parties, a Stay Will Assist the Court and the Parties ........................ 10

      B. A Stay Would Not Unduly Prejudice or Disadvantage Progressive. .................... 10

      C. A Stay Would Allow the Reexamination Process to Narrow, Refine, and Perhaps Moot Many if not All of the Issues Before the Court, Thus Avoiding Significant Waste or Duplication of Effort by the Parties and the Court. ................................ 11

      D. A Stay Is Appropriate Because Litigation Has Just Begun. .................................. 13

      E. Granting a Stay Would Be Consistent with Congress's Preference that the PTO Determine Patent Validity. .................................................................................... 14

V. CONCLUSION ................................................................................................................ 15

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*01 Communique Lab., Inc. v. Citrix Sys. Inc.*,
   2008 U.S. Dist. LEXIS 19241 (N.D. Ohio Mar. 12, 2008) ................................. 10, 11, 14, 15

*Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*,
   2010 U.S. Dist. LEXIS 92851 (N.D. Ohio Aug. 16, 2010) ............................................. 10, 14

*Avery Dennison Corp. v. Alien Tech. Corp.*,
   2009 U.S. Dist. LEXIS 62237 (N.D. Ohio July 20, 2009) ..................................................... 12

*Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.*,
   1987 U.S. Dist. LEXIS 15033 (N.D. Ill. Jan. 30, 1987) ................................................... 11, 15

*Gould v. Control Laser Corp.*,
   705 F.2d 1340 (Fed. Cir. 1983) ............................................................................................. 9

*Grayling Indus., Inc. v. GPAC, Inc.*,
   1991 U.S. Dist. LEXIS 16750 (N.D. Ga. Mar. 25, 1991) .................................................... 14

*Guthy-Renker Fitness LLC v. Icon Health & Fitness*,
   1998 U.S. Dist. LEXIS 16553 (C.D. Cal. July 15, 1998) ............................................... 12, 13

*Ingro v. Tyco Industries, Inc.*,
   1985 U.S. Dist. LEXIS 19300 (N.D. Ill. May 31, 1985) ...................................................... 15

*Magna Donnelly Corp. v. Pilkington N. Am., Inc.*,
   2007 U.S. Dist. LEXIS 17536 (W.D. Mich. March 12, 2007) ............................... 5, 11, 12, 13

*Patlex Corp. v. Mossinghoff*,
   758 F.2d 594 (Fed. Cir. 1985) ............................................................................................... 7

*Proctor & Gamble Co. v. Kraft Foods Global, Inc.*,
   549 F.3d 842 (Fed. Cir. 2008) ............................................................................................... 9

*Progressive Casualty Insurance Co. v. Safeco Insurance Co.*,
   2010 WL 4699870 (N.D.Ohio Nov. 12, 2010) (Memorandum of Opinion and Order) ............ 3

*Snyder Seed Corp. v. Scrypton Sys., Inc.*,
   1999 U.S. Dist. LEXIS 12149 (W.D.N.Y. June 11, 1999) ................................................... 14

*Tap Pharm. Prods. v. Atrix Labs.*,
   2004 U.S. Dist LEXIS 3684 (N.D. Ill. Mar 4, 2004) ...................................................... 12, 14

**STATUTES**

35 U.S.C. § 154(a)(2) ................................................................................................................7

Public Law No. 96-517, Act of Dec. 12, 1980, 96th Cong., 2d Sess., 94 Stat. 3015
(codified at 35 U.S.C. §§ 301-307 (1981)) ................................................................ 14

**OTHER AUTHORITIES**

Pilot Program for Waiver of Patent Owner's Statement in Ex Parte Reexamination
Proceedings, 75 Fed. Reg. 47,270 (Aug. 5, 2010) ..................................................... 6

Defendants Safeco Insurance Company of Illinois, Safeco Insurance Company of America, Liberty Mutual Fire Insurance Company, and Liberty Mutual Insurance Company (collectively, the "Liberty Mutual Defendants") respectfully submit this memorandum in support of their Motion to Stay Litigation Pending *Ex Parte* Reexamination.

**I.       INTRODUCTION**

The United States Patent and Trademark Office ("PTO") granted U.S. Patent 7,124,088 ("the '088 patent") based on Progressive Casualty Insurance Company's ("Progressive") argument that its claims required the verification, adjustment, and implementation of insurance policy information based on "data received from the policyholder through a web browser." *See* Ex. A, 4/5/06 Notice of Allowance, at 2. The PTO granted U.S. Patent 7,877,269 ("the '269 patent") – a later-filed continuation of the '088 patent – based on Progressive's argument that its claims required the identification of a policyholder and verification of policy information at the same rate data is received from the policyholder. *See* Ex. B, 10/27/10 Notice of Allowance, at 3. The Liberty Mutual Defendants have uncovered a prior art reference – U.S. Pat. No. 5,903,873, issued to Peterson *et al.*, "System for Registering Insurance Transactions and Communicating with a Home Office" ("Peterson") – that discloses these precise features, upon which Progressive relied to distinguish the prior art. The Peterson reference, discussed *infra*, was not considered by the PTO during examination of the '088 and '269 patents, but disclosed these exact same features in a patent application filed *three years* before the application for the '088 patent.

Based on this prior art—and within 76 days of when Progressive served the Liberty Mutual Defendants with the Complaint—Defendant Liberty Mutual Insurance Company ("Liberty Mutual") has filed requests for *ex parte* reexamination of each of the patents with the

1

PTO.[1]  This litigation should be stayed immediately, while the PTO decides whether to reexamine the patents-in-suit and continuing until the PTO completes both reexamination proceedings.  Alternatively, this litigation should be stayed once the PTO has decided to conduct the reexamination of the '088 patent or the '269 patent until the PTO completes the reexamination proceedings.  The PTO conducts a full reexamination proceeding in approximately 92% of *ex parte* requests, and approximately 75% of such reexaminations result in a finding of invalidity or in amendments to the patent claims.  *See* Ex. C, *Ex Parte Reexamination Filing Data*, at 1-2.  The likelihood that the '088 and '269 patents will be found invalid on reexamination, or at least substantially amended and narrowed, is particularly high because the prior art identified by Liberty Mutual discloses the same features the PTO relied upon to issue the '088 and '269 patents as an initial matter.

A stay during the pendency of the reexamination would also make the litigation more efficient and avoid unnecessary expenditure and duplication of effort by the parties and the Court.  Failure to stay the case would result in a significant waste of the Court's and parties' resources in the likely event that reexamination results in the invalidation or narrowing of the claims at issue here.  Even if the claims are only amended, significant aspects of the case would need to be re-opened and revisited if the case proceeds in parallel to the reexaminations.

A stay of the litigation pending reexamination will not unduly delay the proceedings. PTO rules require that reexaminations related to litigation "have priority over all other cases," Ex. D, MPEP § 2261,[2] and the reexamination in this case is therefore likely to be completed in less time than the 20-month average for all reexaminations.  Moreover, Progressive has

---

[1] And within 67 days of when Progressive served its Amended Complaint to add the '269 patent.

[2] The MPEP, UNITED STATES PATENT AND TRADEMARK OFFICE, MANUAL OF PATENT EXAMINING PROCEDURE (8th ed. 2001), is the official rule book that patent examiners use for all patent examinations, including reexaminations. All excerpts from the MPEP are attached, in order, in Exhibit D.

substantial control over the pace with which the '088 and '269 reexaminations will be concluded. Progressive can, for example, reduce the reexaminations' duration by up to five months by participating in a PTO pilot program for expedited proceedings. Progressive can further speed the reexamination proceedings by responding promptly to PTO communications.

Finally, Progressive will not be prejudiced by a stay. Progressive has not sought a preliminary injunction, and thus has impliedly acknowledged that a monetary remedy would adequately compensate Progressive for any purported infringement. Because the Liberty Mutual Defendants are fully capable of paying a damage award for any purported infringement during the time that the reexamination is pending, Progressive would suffer no prejudice from a stay during the pendency of the reexamination proceedings.

In another case involving many of the same parties pending before this same Court (Civil Action No. 1:10-cv-01370-PAG), the Hon. Patricia A. Gaughan granted Liberty Mutual's Motion to Stay Litigation Pending *Ex Parte* Reexamination of U.S. Patent No. 6,064,970 (the "'970 patent") **_before_** the PTO granted Liberty Mutual's request for reexamination. Ex. E, *Progressive Casualty Insurance Co. v. Safeco Insurance Co.,* 2010 WL 4699870 (N.D.Ohio Nov. 12, 2010) (Memorandum of Opinion and Order). On November 24, 2010, soon after the stay was entered, the PTO granted Liberty Mutual's request to reexamine the '970 patent. Ex. F, 11/24/10 Order Granting Request for *Ex Parte* Reexamination. Only three and a half months later, on March 7, 2011, the PTO issued a rejection of **_all_** of the '970 patent's claims based on the references and arguments in Liberty Mutual's reexamination request. Ex. G, 3/7/11 Office Action in *Ex Parte* Reexamination (excerpt). A similar result is likely in the reexaminations of the '088 and '269 patents because of the strength of the prior art provided by Liberty Mutual in the reexamination requests. A stay is therefore similarly appropriate in the present litigation.

## II. STATEMENT OF FACTS

### A. Liberty Mutual Has Diligently Pursued Reexamination, Which Will Proceed Quickly Unless Progressive Delays.

Soon after suit was filed on January 12, 2011, Liberty Mutual began conducting research to identify prior art that disclosed the purportedly novel features upon which issuance of the patents-in-suit was based – for the '088 patent, the verification, adjustment and implementation of insurance policy information based on "data received from the policyholder through a web browser," and for the '269 patent, the identification of an insurance policyholder and verification of insurance policy information at the same rate data is received from the policyholder *See* Ex. A, at 2 and Ex. B, at 3. Liberty Mutual quickly identified the Peterson reference that discloses precisely these critical features of the '088 and '269 patents. Liberty Mutual thereafter promptly prepared and filed its *ex parte* requests for reexamination of the '088 patent on March 31, 2011 and of the '269 patent on April 4, 2011, just 72 days and 76 days, respectively, after the first Liberty Mutual Defendant was served with the original Complaint. As discussed further below, the requests – each of which is over 230 pages long and includes more than 690 pages of exhibits – offer a detailed and compelling analysis of the manner in which the '088 and '269 patents are anticipated by prior art. Ex. H, Request for *Ex Parte* Reexamination of U.S. Patent No. 7,124,088 and Ex. I, Request for *Ex Parte* Reexamination of U.S. Patent No. 7,877,269.[3]

The Court and parties will know very soon whether, as expected, the PTO will undertake to reexamine the patents-in-suit. The PTO typically decides within two weeks of filing whether the reexamination requests conform with the necessary formalities and, by rule, the PTO will

---

[3] Because each Request for Reexamination and its exhibits totals hundreds of pages, only the introductions and table of contents to the '088 and '269 requests are attached at Exhibit H and Exhibit I, respectively. The complete filings are publicly available on the PTO website at http://portal.uspto.gov/external/portal/pair. The website is accessed by entering the two displayed code words. From there, enter "90/011612" as the "Application Number" to obtain reexamination information and documents for the '088 patent request, or "90/011619" for the '269 patent request.

decide whether to conduct the reexamination of the '088 patent by June 30, 2011 and the reexamination of the '269 patent by July 1, 2011. Ex. D, MPEP § 2241. The PTO is highly likely to find that there are substantial new questions of patentability, and thus initiate full reexamination proceedings for each patent. The PTO conducts a full reexamination proceeding in approximately 92% of *ex parte* requests. Ex. C, at 1. Reexamination is particularly likely in this instance because of the direct relevance of the Peterson reference that is identified as prior art in the *ex parte* reexamination request. Moreover, the Peterson reference was not before the PTO during prosecution of the '088 and '269 patents.

Once the PTO decides to conduct a reexamination, it can and should be completed expeditiously. When a patent is involved in litigation, the PTO conducts reexamination on an accelerated schedule. *See* Ex. D, MPEP § 2261 ("Any cases involved in litigation, whether they are reexamination proceedings or reissue applications, will have priority over all other cases."); *Magna Donnelly Corp. v. Pilkington N. Am., Inc.*, 2007 U.S. Dist. LEXIS 17536, at *16 (W.D. Mich. March 12, 2007) (citing MPEP § 2261). If the litigation is stayed, "all aspects of the proceeding will be expedited to the extent possible" and "[a]ction on such a proceeding will generally take precedence to any other action taken by the examiner." Ex. D, MPEP § 2286(I). Therefore, if this Court were to grant the Liberty Mutual Defendants' motion, the pendency of the reexamination would likely be shorter than 20 months, which is the median reexamination pendency for all *ex parte* reexaminations. Ex. C, at 2.

Progressive will have substantial control over the duration of these reexaminations, which can be shortened significantly if Progressive so desires. Progressive can shorten the reexamination process by up to five months by participating in a pilot program created by the

5

PTO under which patent owners forgo filing an "owner's statement."[4] Ex. J, Pilot Program for Waiver of Patent Owner's Statement in Ex Parte Reexamination Proceedings, 75 Fed. Reg. 47,270 (Aug. 5, 2010). An owner's statement gives the patentee an opportunity to file a preliminary statement in response to a reexamination request. Even *before* the pilot program, parties generally declined to file an owner's statement because they knew they would have the opportunity to respond fully to the requester's arguments during the normal course of communicating with the PTO. *See* Ex. D, MPEP § 2254. Thus, only about 10% of patent owners choose to file one. Ex. J, at 47,270. The pilot program recognizes this reality and affords the patentee the opportunity to waive the owner's statement and thereby truncate the reexamination process by as much as five months.[5]

Progressive can also speed the reexamination process by promptly responding to PTO communications. As a matter of procedure, a patentee typically has a "statutory period" (such as two months) within which to respond to PTO "office actions" (substantive communications). Ex. D, MPEP § 2263. The patentee may, however, file a response *before* the due date, thereby accelerating the process. Alternatively, the patentee can seek to extend the statutory period (and thus delay the reexamination) by making an application and demonstrating cause. *Id.* § 2265. In other words, to the extent that Progressive contends that a stay would unduly delay adjudication of its patent infringement claims, the length of any delay is largely within its control.[6]

---

[4] Defendants informed Progressive of the pilot program on September 29, 2010 with regard to the Request for Reexamination of the '970 patent. Ex. K, 9/29/2010 letter from N. Jantzi to L. Miller.

[5] Notably, when Progressive had the opportunity to participate in the pilot program in connection with reexamination of the '970 patent, Progressive declined at the outset to waive the owner's statement (and thereby speed the process). Instead, Progressive waited until two days *after* the two month period for filing an owner's statement, and only *then* formally waived that right. Ex. L, 1/26/2011 Waiver of Right to File Patent Owner Statement in Ex Parte Reexamination.

[6] Rather than expedite the reexamination, Progressive has *added* new claims to the '970 patent, thereby delaying the ultimate resolution of the reexamination. That conduct confirms the wisdom of staying the related litigation, so that the Court can focus its energies on only those claims, if any, that the PTO ultimately recognizes as valid.

Liberty Mutual will not be involved in the reexamination. Once an *ex parte* reexamination request is filed, the patentee defends its patent without any further communication from the requester (*i.e.*, Liberty Mutual or any other Liberty Mutual Defendant). *Id.* § 2254.

The reexamination will be resolved long before either of the patents-in-suit expires. The '088 patent has an effective filing date of July 30, 1999 and will expire on July 30, 2019, over eight years from now, and the '269 patent claims the same effective filing date, but due to a patent term adjustment, will expire on November 3, 2020, over nine years from now. 35 U.S.C. § 154(a)(2). Assuming *arguendo* that either the '088 patent or the '269 patent emerges from the PTO reexamination with any valid claims, Progressive will have ample time to enforce that patent before it expires. *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 603 (Fed. Cir. 1985).

### B. The Reexamination Request is Likely to Result in Progressive's Claims Being Canceled or Amended.

Patent claims are canceled or amended in 75% of *ex parte* reexamination proceedings. Ex. C, at 2. A similar result is particularly likely here, since the reexamination requests raise substantial new questions of patentability regarding anticipation or obviousness that precisely target the supposed point of novelty of the '088 and '269 patents.

The reexamination requests present new art that demonstrates the claimed subject matter of the '088 patent and the '269 patent was old. The independent claims of the '088 patent and the '269 patent are addressed to "systems" (claim 1 of the '088 patent; claims 1, 10, 13, 15, and 53 of the '269 patent), the elements of which generally break down into four categories:

> (1) a "browser," "web browser," "computer," "computer system," or "interface" that enables an insurance policyholder to access insurance data;
> (2) an "information module" that identifies the insurance policyholder and verifies an insurance policy parameter of that insurance policy holder in "real-time";

7

  (3) a "publicly accessible distributed network" or "publicly accessible network" for "transferring data"; and

  (4) an "insurance policy adjustment module" that adjusts an insurance policyholder's "policy parameter" in "real-time."

Ex. N, '088 Patent. Over a marathon prosecution with seven office actions, the Applicants finally managed to convince the PTO examiner to allow the '088 patent claims based on one supposed key to patentability: the verification, adjustment and implementation of insurance policy information based on "data received from the policyholder through a web browser." *See* Ex. A, at 2. The '269 patent claims were later allowed after an additional three office actions, in a continuation of the '088 patent's application, based on one supposed key to patentability: the identification of an insurance policyholder and verification of insurance policy information at the same rate data is received from the policyholder. Ex. B, at 3.

  It is little wonder that Progressive was barely able to eke out these allowances over seven years of prosecution: both patents' specifications consist of little more than a catalog of potentially convenient (and well known) web site features. No particular hardware is identified. No particular software is described. Indeed, Progressive affirmatively states that transmission over the Internet – a feature supposedly at the heart of the claimed inventions – could be accomplished "with any conventional browser program." Ex. N, at Col 5, lines 4-7.

  Peterson, however, disclosed these very same features that were key to issuance of the '088 and '269 patents in a patent application filed *three years* before the application for the '088 patent (to which the '269 patent claims priority), and in far greater detail. Ex. O, Peterson. Peterson detailed a system in which a policyholder – assisted by a portable-PC-carrying agent in the policyholder's home – transmits policy changes in real-time over a browser-based interface to the insurer's computer, which automatically verifies, underwrites, adjusts and implements changes to the policy and sends the adjusted policy data back across the Internet to the portable

8

PC in the policyholder's home. Several of these features are illustrated in Figure 17 of Peterson, set forth here (with dashed ovals added for emphasis):



In other words, Peterson disclosed the details of how an insurance policy service and delivery system – with features like those Progressive later hypothesized in the '088 patent and the '269 patent – could actually be implemented, and Peterson did so many years before the much more vague '088 and '269 patent applications were filed.

### III. STANDARD OF REVIEW

Courts have the power to manage their dockets by granting stays pending reexamination of a patent-in-suit. *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983); *Proctor & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 848-49 (Fed. Cir. 2008). Courts in the Northern District of Ohio have considered the following factors when deciding whether to exert their power to grant a stay: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and

9

trial of the case; and (3) whether discovery is complete and whether a trial date has been set."
*Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*, 2010 U.S. Dist. LEXIS 92851, at *4 (N.D. Ohio Aug. 16, 2010); *01 Communique Lab., Inc. v. Citrix Sys. Inc.*, 2008 U.S. Dist. LEXIS 19241, at *4 (N.D. Ohio Mar. 12, 2008).

## IV. ARGUMENT

### A. As Demonstrated by Judge Gaughan's Stay in a Case with Very Similar Facts and Overlapping Parties, a Stay Will Assist the Court and the Parties

In another patent case in the Northern District of Ohio involving many of the same parties (Civil Action No. 1:10-cv-01370-PAG), the Honorable Patricia A. Gaughan granted Liberty Mutual's Motion to Stay Litigation Pending *Ex Parte* Reexamination of U.S. Patent No. 6,064,970 (the "'970 patent"), even though, at the time of the stay, the PTO had not granted Liberty Mutual's request for reexamination. Ex. E. On November 24, 2010, soon after the stay was entered, the PTO granted Liberty Mutual's request to reexamine the '970 patent. Ex. F. Only three and a half months later, on March 7, 2011, the PTO issued a rejection of **_all_** of the '970 patent's claims based on the references and arguments in Liberty Mutual's request. Ex. G. A similar result is likely in the reexamination of the '088 patent and the '269 patent because of the strength of the prior art provided by Liberty Mutual in the reexamination requests. As in the case before Judge Gaughan, a stay is appropriate here because the reexamination could moot entirely, and would at least narrow and clarify, the issues presented for judicial resolution.

### B. A Stay Would Not Unduly Prejudice or Disadvantage Progressive.

As the Liberty Mutual Defendants explained above, the length of any delay pending reexamination is relatively short and largely within Progressive's control. Progressive cannot credibly claim that this stay will cause it undue prejudice. When the plaintiff fails to act with urgency, there is little risk of prejudice. *Allied Erecting*, 2010 U.S. Dist. LEXIS 92851, at *7.

Here, Progressive's decision not to move for a preliminary injunction demonstrates that any delay will not cause it undue prejudice. *See id.* at *7.

By deciding not to seek a preliminary injunction, Progressive has demonstrated that monetary damages are adequate to compensate it for the Liberty Mutual Defendants' alleged infringement. *See Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.*, 1987 U.S. Dist. LEXIS 15033, at *5-6 (N.D. Ill. Jan. 30, 1987). If Progressive's patents emerge from reexamination unscathed, and if the Liberty Mutual Defendants are determined to have infringed, Progressive will be able to seek damages for the time that the reexamination was pending. *See Magna Donnelly*, 2007 U.S. Dist. LEXIS 17536, at *18. Liberty Mutual is a large insurance company, and there is no legitimate question that Liberty Mutual could pay any damages judgment against it in this case.

    **C.** **A Stay Would Allow the Reexamination Process to Narrow, Refine, and Perhaps Moot Many if not All of the Issues Before the Court, Thus Avoiding Significant Waste or Duplication of Effort by the Parties and the Court.**

In the absence of a stay, the parties and the Court will expend considerable efforts litigating issues that are likely to be significantly modified or mooted as a result of the reexamination. Patent claims are canceled or amended in 75% of reexamination proceedings. Ex. C, at 2. In the likely event that the claims at issue in this litigation are modified or cancelled, the Court and the parties will have expended considerable resources unnecessarily, either litigating issues that become moot, or because claim modifications require the Court and parties to revisit previously-resolved issues.

If a stay is granted, there will likely be substantially fewer issues to litigate when the '088 and '269 patents emerge from reexamination. The PTO changes or modifies claims during the great majority of *ex parte* reexaminations. If the PTO cancels entire claims, it will greatly simplify the litigation. *Citrix*, 2008 U.S. Dist. LEXIS 19241, at *6 (citing *Gould*, 705 F.2d at 1342). When, as here, there are only two patents at issue and there are strong grounds for

11

invalidating the patents, the likelihood that reexamination will result in mooting or significantly streamlining the litigation is particularly great. *See Avery Dennison Corp. v. Alien Tech. Corp.*, 2009 U.S. Dist. LEXIS 62237, at *7-8 (N.D. Ohio July 20, 2009). Discovery, claim construction, and validity determinations are all simplified and made less costly to litigate if the PTO cancels some or all of the claims. *Guthy-Renker Fitness LLC v. Icon Health & Fitness*, 1998 U.S. Dist. LEXIS 16553, at *6 (C.D. Cal. July 15, 1998). As a result, a stay pending reexamination may simplify the proceedings enough to make up for any delay. *Tap Pharm. Prods. v. Atrix Labs.*, 2004 U.S. Dist LEXIS 3684, at *5 (N.D. Ill. Mar 4, 2004). Indeed, if the PTO cancels all claims, the Court can immediately dismiss the case. A stay eliminates the risk of needlessly litigating claims that are eventually canceled. *Id.* at *7.

A stay would also be beneficial if the PTO modifies claims instead of canceling them outright. Without a stay, the Court and the parties risk engaging in costly and time consuming litigation concerning claim language that ends up being moot. *Id.* at *6-7. If the PTO changes the claim language of the '088 patent or the '269 patent after extensive litigation, the parties risk having to engage in supplemental discovery to cover new infringement and invalidity theories. The Court's construction of any claim's terms would almost certainly need to be revisited in light of changes to the claims. And, precisely because reexamination could require the Court to revisit its claim construction, the typical function of claim construction in encouraging settlement will be reduced. *Magna Donnelly*, 207 U.S. Dist. LEXIS 17536, at *6.

A stay would streamline litigation even in the unlikely even that the '088 and '269 patents emerge from reexamination unchanged. The dialogue between the PTO and Progressive will clarify important issues in the case and may eliminate certain issues of validity that have already been vetted. Progressive is also likely to make representations to the PTO that will

further define the scope of the '088 patent and the '269 patent. *See Guthy-Renker Fitness*, 1998 U.S. Dist. LEXIS 16553, at *5-6. As discussed below, this will also aid in reducing discovery disputes.

If the case proceeds concurrently with the reexaminations, it is clear that the Court will be required to resolve already-evident disputes regarding the scope of discovery. The Liberty Mutual Defendants note that Progressive has already propounded excessive document requests to Allstate Insurance Company and Allstate Fire and Casualty Insurance Company (collective, the "Allstate Defendants") that are effectively boundless in scope. For example, in Request No. 20, Progressive asks for "[a]ll documents relating to policies that use, or include the use of, the Accused Products." Ex. M, 2/4/11 Progressive Casualty Insurance Company's First Set of Requests for Documents and Things (Nos. 1-80) to the Allstate Defendants. Given that the "the Allstate website" is listed as an Accused Product, it is likely that this broad request will include all documents relating to all of Allstate's policies. Progressive's intent to press the very outer-most reaches of discovery portends the expenditure of considerable resources by the parties and the Court to resolve numerous disputes that will inevitably arise. Staying this case until the PTO's conclusion of the reexaminations will help clarify the scope of the patents-in-suit, even in the unlikely event that they do not result in cancelled or amended claims.

D.    **A Stay Is Appropriate Because Litigation Has Just Begun.**

The Liberty Mutual Defendants' prompt action in both requesting reexamination and moving to stay weighs strongly in favor of granting a stay. *Magna Donnelly*, 207 U.S. Dist. LEXIS 17536, at *12. ("Defendants have sought reexamination before the PTO and a stay in this Court even before case scheduling deadlines have been set. It would be difficult to conceive of a case in which this factor more strongly favored the issuance of a stay."). The Liberty Mutual Defendants filed their motion at least ten months before the deadline provided by the

13

local rules.[7] Courts routinely grant motions to stay pending reexamination brought during the pleading stage. *See, e.g., Snyder Seed Corp. v. Scrypton Sys., Inc.*, 1999 U.S. Dist. LEXIS 12149 (W.D.N.Y. June 11, 1999); *Tap Pharm.*, 2004 U.S. Dist. LEXIS 3684. And courts in the Northern District of Ohio have granted stays at much later stages. *E.g. Allied Erecting*, 2010 U.S. Dist. LEXIS 92851 (granting a stay during discovery); *Citrix*, 2008 U.S. Dist. LEXIS 19241 (granting a stay while seven summary judgment motions were pending).

The Liberty Mutual Defendants did not engage in dilatory tactics. A stay of litigation is sometimes denied if the moving party has unnecessarily delayed in filing for reexamination or for a stay after a reexamination request has been filed. *See Citrix*, 2008 U.S. Dist. LEXIS 19241, at *9-11. Here, the Liberty Mutual Defendants prepared and filed two lengthy reexamination requests within 76 days after the first Liberty Mutual Defendant was served with the original Complaint. This motion for stay was filed within days of the reexamination requests. Stays are regularly granted for defendants who display far less diligence. *See, e.g., Grayling Indus., Inc. v. GPAC, Inc.*, 1991 U.S. Dist. LEXIS 16750, at *6-7 (N.D. Ga. Mar. 25, 1991) (granting stay despite a two year delay before requesting reexamination and even though it was "not clear that Plaintiffs had good reason for the delay").

### E. Granting a Stay Would Be Consistent with Congress's Preference that the PTO Determine Patent Validity.

Congress intended that reexamination be used to improve judicial efficiency and predicted many of its benefits. The Patent Act of 1980 introduced changes to United States patent laws to allow a person to request reexamination of a patent. Public Law No. 96-517, Act of Dec. 12, 1980, 96th Cong., 2d Sess., 94 Stat. 3015 (codified at 35 U.S.C. §§ 301-307 (1981)).

---

[7] The local patent rules require parties to file motions for stay before or on the due date of their Final Contentions. L.P.R. 3.11. The Final Contentions are due 30 days after the Court's claim construction ruling, *see* L.P.R. 3.10, which will occur after all claim construction submissions are due, which would be on December 15, 2011 if the schedule proposed by the parties is accepted by the Court. (Dkt. No. 46).

One of the key rationales in passing the Act was to use the PTO's technical expertise to reduce the cost and burden of litigating in court. *Ingro v. Tyco Industries, Inc.*, 1985 U.S. Dist. LEXIS 19300, at *9-10 (N.D. Ill. May 31, 1985). Since then, Courts have confirmed that permitting the PTO to determine threshold validity issues has many benefits including: (1) the initial consideration of the prior art submitted with the reexamination by the PTO, with its particular expertise; (2) the alleviation of many discovery problems relating to the prior art; (3) the dismissal of the suit in cases resulting in effective invalidity of the patent; (4) the encouragement of a settlement based on the outcome of the reexamination without the further use of the Court; (5) the reduction of the complexity and length of the litigation because the record of reexamination would likely be entered at trial; (6) the easier limitation of issues, defenses, and evidence in pre-trial conferences; and (7) the reduction of cost for the parties and the Court. *Emhart*, 1987 U.S. Dist. LEXIS 15033, at *3-4. Courts in the Northern District of Ohio, in particular, have recognized that Congress's intent behind the 1980 Act is persuasive grounds for granting a stay pending reexamination. *See e.g. Citrix*, 2008 U.S. Dist. LEXIS 19241, at *3-4. Because granting a stay at such an early stage in the litigation would simplify the issues before the court without imposing undue prejudice on Progressive, it represents an ideal situation to further the public policy of having the PTO decide issues of validity.

V. **CONCLUSION**

For the foregoing reasons, the Liberty Mutual Defendants respectfully request that this Court stay all proceedings in this action starting immediately and continuing until the PTO's reexaminations of the '088 patent and the '269 patent are complete.

Dated:   April 4, 2011                              Respectfully submitted,

*/s/ John S. Cipolla*
John S. Cipolla (State Bar No. 0043614)
CALFEE, HALTER & GRISWOLD, LLP
1400 KeyBank Center
800 Superior Avenue
Cleveland , OH 44114
Telephone:  (216) 622-8200
Facsimile:  (216) 241-0816
jcipolla@calfee.com

James R. Myers (*pro hac vice*)
Nicole M. Jantzi (*pro hac vice*)
ROPES & GRAY, LLP
One Metro Center
700 12th St.
Washington, DC  20005
Telephone:  (202) 508-4600
Facsimile:  (202) 508-4650
James.Myers@ropesgray.com
Nicole.Jantzi@ropesgray.com

Joshua Van Hoven
ROPES & GRAY, LLP
1900 University Avenue
East Palo Alto, CA  94303-2284
Telephone:  (650) 617-4000
Facsimile:  (650) 617-4090
Josh.VanHoven@ropesgray.com

Attorneys for Defendants SAFECO INSURANCE COMPANY OF ILLINOIS, SAFECO INSURANCE COMPANY OF AMERICA, LIBERTY MUTUAL FIRE INSURANCE COMPANY, AND LIBERTY MUTUAL INSURANCE COMPANY